| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF WASHINGTON<br>AT SEATTLE | |
| ATLAS EQUIPMENT CO., LLC,<br><br>    Plaintiff,<br><br>v.<br><br>WEIR SLURRY GROUP, INC. and WEIR MINERALS AUSTRALIA, LTD.,<br><br>    Defendants, Counterclaimants, and Third-Party Plaintiffs,<br><br>v.<br><br>ATLAS EQUIPMENT CO., INC. and ATLAS EQUIPMENT MANUFACTURING LTD., a/k/a HEBEI ATLAS EQUIPMENT MANUFACTURING, LTD.,<br><br>    Third-Party Defendants. | C07-1358Z<br><br>ORDER |

THIS MATTER comes before the Court on motions for attorney fees brought by plaintiff Atlas Equipment Co., LLC and third-party defendant Atlas Equipment Co., Inc. (collectively, "Atlas"), and third-party defendant Atlas Equipment Manufacturing, Ltd. also known as Hebei Atlas Equipment Manufacturing, Ltd. ("Hebei"). Having reviewed all papers filed in support of and in opposition to each motion, the Court DENIES Atlas's motion, docket no. 158, and GRANTS IN PART and DENIES IN PART Hebei's motion, docket no. 160, for the reasons stated in this Order.

ORDER - 1

**Discussion**

**A.  Lanham Act**

Both Atlas and Hebei seek attorney fees under the Lanham Act, which provides in relevant part that the Court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). A case may be deemed exceptional when "a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith." *See Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 827 (9th Cir. 1997) (quoting *Scott Fetzer Co. v. Williamson*, 101 F.3d 549, 555 (8th Cir. 1996)).

In seeking attorney fees, Atlas and Hebei contend that counterclaimants/third-party plaintiffs Weir Slurry Group, Inc. and Weir Minerals Australia, Ltd. (collectively, "Weir") asserted groundless counterclaims and third-party claims and pursued them for longer than appropriate in the litigation.[1] The Court does not agree. Although the Court ultimately ruled against Weir on Atlas's motion for summary judgment, in which Hebei joined, and dismissed Weir's counterclaims and third-party claims, *see* Order (docket no. 157), the Court does not view Weir's claims as frivolous or improvidently filed.

Before alleging its claim for "reverse passing off," Weir analyzed a pump sold by Atlas Equipment Co., LLC, and discovered that the pump casing, which originally bore Weir's trademark, had been altered; metallographic testing revealed that the raised letters AH WARMAN had been ground off the casing. *See* Order at 7 (docket no. 157); *see also* Amended Third-Party Complaint at ¶ 16 (docket no. 60). Although Weir was not able through discovery to establish that the adulterated casing was produced by Weir, a fact Weir was required to prove as an element of its "reverse passing off" claim, the Court is satisfied that Weir's assertion of the claim met the criteria of Rule 11(b). Moreover, Weir's inability

---

[1] Weir argues that Atlas's and Hebei's motion for attorney fees is premature because it was filed before judgment was entered in this case. Weir's interpretation of Rule 54(d)(2) is flawed. Rule 54(d)(2) does not mandate that a party wait until after judgment to submit a request for attorney fees; rather, it sets a time limit, triggered by entry of judgment, for the filing of such motion. Fed. R. Civ. P. 54(d)(2)(B)(i).

ORDER - 2

to trace the pump casing to one of its foundries does not undermine the legitimacy or reasonableness of Weir's discovery efforts; Weir could not have known in the absence of discovery how the casing arrived at its doctored state. Finally, the Court is persuaded that Weir seasonably abandoned its "reverse passing off" claim.

With regard to Weir's trade dress infringement claim, the Court concludes that Weir relied on a "good faith argument for an extension . . . of existing law." Wash. RPC Rule 3.1. Weir raised genuine issues of material fact as to two of the three elements of its trade dress infringement claim, *see* Order at 15, 23 (docket no. 157), and as to the other element, namely functionality, the law is not fully developed and Weir presented non-frivolous, and rather challenging, contentions to support its position, *see* Transcript (Aug. 14, 2009) at 72:10-11, 73:20-24, Exh. A to Roos Decl. (docket no. 168-2). Finally, the Court also takes into account that the party initiating this declaratory judgment action was Atlas Equipment Co., LLC, and not Weir. The Court HOLDS that this case is not "exceptional" within the meaning of the Lanham Act, and that attorney fees are not warranted under 15 U.S.C. § 1117(a).

**B.      Long-Arm Statute**

Hebei also seeks attorney fees under Washington's long-arm statute, which provides in relevant part:

> In the event the defendant is personally served outside the state on causes of action enumerated in this section, and prevails in the action, there may be taxed and allowed to the defendant as part of the costs of defending the action a reasonable amount to be fixed by the court as attorneys' fees.

RCW 4.28.185(5). In response to Hebei's motion, Weir contends *inter alia* that Hebei was not "served outside the state" because Hebei waived personal service. Hebei replies that it "accepted service in China," Reply at 3 (docket no. 170), but it cites only the Waiver of Service of Summons, Exh. F to Roos Decl. (docket no. 168-7), which is on pleading paper generated by Weir's Seattle-based attorneys, and which does not indicate the location in which Hebei's authorized representative executed the document. Thus, the exact place of

ORDER - 3

service cannot be determined from the record. In addition, neither Hebei nor Weir provide any authority interpreting the "served outside the state" language of RCW 4.28.185(5) or analyzing the effect that waiver of personal service has for purposes of attorney fees under Washington's long-arm statute.

The Court, however, is persuaded that Hebei's waiver of personal service does not affect its entitlement to attorney fees under RCW 4.28.185(5). One of the aims of the waiver of service rule is "to eliminate [for many parties] the costs of service of a summons." Fed. R. Civ. P. 4(d) cmt. (1993). "The only issues eliminated [by waiver of service] are those involving the sufficiency of the summons or the sufficiency of the method by which it is served." *Id.* A defendant who waives service may still object to personal jurisdiction and venue, Fed. R. Civ. P. 4(d)(5), and nothing in the rule indicates that waiver of service has any consequences under federal or state attorney fee provisions or long-arm statutes. In this case, because Hebei signed a waiver, Weir did not incur the additional expense or delay associated with efforts to personally serve Hebei in China. To allow Weir to accept this benefit from the waiver but then to insulate itself from the results, under the long-arm statute, of having brought Hebei into this action would discourage future non-resident defendants from waiving personal service and undermine the purposes of Rule 4(d).[2]

Although Hebei falls within the ambit of RCW 4.28.185(5), the Court is not obligated to award attorney fees. *See* *State v. O'Connell*, 83 Wn.2d 797, 844, 523 P.2d 872 (1974) ("this provision is discretionary and not mandatory"). In exercising its discretion concerning fees under the long-arm statute, the Court must "balance[ ] the dual purposes of

---

[2] Weir cites *Morris v. Int'l Yogurt Co.*, 41 Wn. App. 226, 703 P.2d 318 (1985), *rev'd in part*, 107 Wn.2d 314, 729 P.2d 33 (1986), for the proposition that, because Hebei waived service and was therefore "not actually served outside the State of Washington," Hebei is not entitled to fees under RCW 4.28.185(5). Response at 6 (docket no. 169-5). *Morris*, however, does not support Weir's contention. In *Morris*, the corporate defendant was personally served within Washington, and some of the individual defendants were personally served in Oregon. They were not awarded attorney fees under the long-arm statute, but did receive fees pursuant to the discretionary provision of the Franchise Investment Protection Act and the mandatory provision of the franchise agreement at issue. 41 Wn. App. at 231-32 & n.10. *Morris* did not involve waiver of service and it did not leave the defendants therein without some award of attorney fees.

ORDER - 4

recompensing an out-of-state defendant for its reasonable efforts while also encouraging the full exercise of state jurisdiction." <u>Scott Fetzer Co. v. Weeks</u>, 122 Wn.2d 141, 149, 859 P.2d 1210 (1993). A prevailing defendant is entitled only to the "amount necessary to compensate him for the added litigative burdens resulting from the plaintiff's use of the long-arm statute."[3] <u>Id.</u> (quoting <u>Scott Fetzer Co. v. Weeks</u>, 114 Wn.2d 109, 120, 786 P.2d 265 (1990)).

Ordinarily, a foreign defendant seeks dismissal for lack of personal jurisdiction, in which case the defendant may recover "the amount in attorney fees he would have incurred had he presented his jurisdictional defense as soon as the grounds for the defense became available to him." <u>Id.</u> In this case, however, Hebei moved for dismissal under Rule 12(b)(2), <u>see</u> Motion (docket no. 73), and over Weir's objection, was permitted to withdraw the motion without prejudice to refiling after the completion of discovery. <u>See</u> Minute Order (docket no. 92); Reply at 5-6 (docket no. 89). Hebei never renewed its Rule 12(b)(2) motion. Nevertheless, Hebei seeks attorney fees relating to the motion, on which it did not in fact prevail. Hebei is not entitled to such fees.[4]

---

[3] Hebei and Weir have proffered contradictory declarations concerning the amount Hebei would have paid in attorney fees had this matter been litigated in China. Hebei asserts that fees would have been in the range of $8,000 to $20,000, while Weir challenges those figures as too low. Qui Decl. at ¶ 5 (docket no. 161); Zhang Decl. at ¶ 5 (docket no. 167). The Court declines to employ Hebei's proposed approach, <u>i.e.</u>, to award the difference between its actual fees and the fees it might have incurred had the action proceeded in China, because such method is, as evidenced by the parties' respective declarations, based primarily on speculation.

[4] Weir asserts that courts "routinely" deny attorney fees under the long-arm statute when a defendant has "more than mere 'minimum contacts.'" Response at 8 (docket no. 169-5). The cases on which Weir relies, however, do not support this proposition. In <u>Beltappo Inc. v. Rich Xiberta, S.A.</u>, 2006 WL 314338 (W.D. Wash.), this Court did deny attorney fees, but only in the context of a motion to dismiss for lack of personal jurisdiction on which the defendant did not prevail; the cited order did not address whether the defendant would have been entitled to fees had it succeeded on the merits. In <u>State v. O'Connell</u>, 84 Wn.2d 602, 528 P.2d 988 (1974), although the Washington Supreme Court referenced the defendant's more than minimum contacts, its decision not to award attorney fees rested on the conclusion that litigation in Washington was not more expensive, and indeed might have been cheaper, than maintaining the action in California, where the defendant resided. <u>Id.</u> at 606-07 ("most of the witnesses resided in Washington and the evidence was located here"). Moreover, even if ties to Washington were a basis to deny Hebei's fee request, the Court would not adopt such approach in this case because the question of personal jurisdiction was never decided. Finally, Weir's contention that Hebei's motion for attorney fees must be denied because Hebei did not press forward on its jurisdictional defense lacks merit. The long-arm statute does not require that a foreign defendant prevail on a Rule 12(b)(2) or similar motion to obtain attorney fees. <u>See</u> <u>Andersen v. Gold Seal Vineyards, Inc.</u>, 81 Wn.2d 863, 868, 505 P.2d 790 (1973) (affirming award of fees when third-party plaintiff took a

Hebei also requests attorney fees for legal services incurred in reviewing the pleadings, preparing responsive pleadings, coordinating with Atlas's counsel, joining Atlas's dispositive motion, monitoring the briefing and progress of the case, attempting to negotiate a settlement, and taking preliminary steps to prepare for trial. Hebei, however, fails to explain how it would have avoided these same fees had this matter been litigated in China. If anything, Hebei incurred significantly less attorney fees in this action than it would have faced as the sole defendant in a case brought in China because it was able, in large part, to ride Atlas's coat tails. Indeed, Hebei was able to secure the dismissal of the third-party claims against it by simply filing a joinder in Atlas's summary judgment motion that consisted of only six lines of text. <u>See</u> Joinder (docket no. 98). In sum, Hebei will not be permitted to use the long-arm statute to seek attorney fees it would have paid regardless of where this action proceeded.

The Court reaches the same conclusion with regard to the fees charged by Hebei's attorney in China. Had Hebei been sued in China, rather than in this forum, it would have been required to retain counsel admitted to practice in, and familiar with the law of, China, and it would have been subject to far more attorney fees than actually charged. In addition, to the extent the requested fees include the costs of translating documents into or from English, such costs are not for legal services and would not be included in any award of attorney fees. The Court cannot, however, determine what portion of the requested fees relate to translation work, as opposed to legal services, because the Declaration of Qui, Yijie, docket no. 161, fails to itemize the asserted 113.4 hours of work ($29,484 in fees), and does not include copies of any invoices or time sheets. This absence of "reasonable documentation of the work performed" is itself a basis for denial of these attorney fees. <u>See</u> <u>Fetzer</u>, 122 Wn.2d at 149-51 (adopting the lodestar approach to fee calculation under

---

voluntary nonsuit, observing that the "legislature must have had in mind situations such as this, as well as those in which the defendant might prevail on the merits, when it provided for the taxing and allowance of costs, including attorneys' fees, in the court's discretion, in cases where the foreign defendant prevails").

RCW 4.28.185(5), which requires "reasonable documentation" concerning the number of hours worked, the type of work performed, and "the category of attorney who performed the work" (quoting *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 597, 675 P.2d 193 (1983))).

Having thus narrowed the fee request, the Court is satisfied that Hebei is entitled to an award of $43,550.50. Hebei contends, and Weir does not dispute, that the scope of discovery in China is more limited than in the United States. Qiu Decl. at ¶ 5 (docket no. 161). The Court has thoroughly reviewed the billing statements attached to the Declaration of James T. Yand, docket no. 162, and concludes that the stated amount accurately reflects the fees associated with discovery necessitated by pursuing this matter in the United States and fairly compensates Hebei for the additional litigative burdens resulting from exercise of long-arm jurisdiction.[5] In computing the award, the Court has not included time spent coordinating with Atlas's counsel or Hebei's counsel in China, which would still have been required had the case against Hebei and the case against Atlas proceeded simultaneously in China and this forum. In addition, the Court has not awarded any attorney fees related to (i) discovery requests propounded to Weir, or (ii) the organization and storing of materials generated by the various parties during the discovery process; Hebei would probably have pursued discovery from Weir in some fashion had the litigation taken place in China, and the various document management activities were primarily for the convenience of the attorneys and were not compelled by the assertion of jurisdiction in this forum. Finally, in several instances, the Court found that the billing statements were either internally inconsistent or

---

[5] The Court denies Weir's request to conduct discovery concerning the reasonableness of the various attorneys' and paralegals' respective rates and hours billed. The Court is satisfied that the hourly rates are commensurate with the experience levels and positions of the individuals involved and consistent with the rates prevailing in the relevant legal community. In addition, the Court concludes that discovery regarding the number of recorded hours is unwarranted.

ORDER - 7

incomplete, and those particular entries were ignored.[6] The following table provides a monthly summary of the amounts awarded by the Court.

| Month | Timekeeper | Hours | Rate | Amount |
|---|---|---|---|---|
| November 2008 | JTY (Yand) | 0.5 | $350 | $175 |
| December 2008 | JTY (Yand) | 6.9 | $350 | $2,415 |
| January 2009 | JTY (Yand) | 5.6 | $350 | $1,960 |
| | PAA (Altman) | 0.3 | $185 | $55.50 |
| | SKI (Irwin) | 0.8 | $150 | $120 |
| February 2009 | JTY (Yand) | 10 | $350 | $3,500 |
| | PJM (Mullenix) | 7.4 | $225 | $1,665 |
| March 2009 | JTY (Yand) | 17.9 | $350 | $6,265 |
| | PJM (Mullenix) | 1.2 | $225 | $270 |
| April 2009 | JTY (Yand) | 76 | $350 | $26,600 |
| May 2009 | JTY (Yand) | 1.5 | $350 | $525 |
| **TOTAL** | | | | $43,550.50 |

The Clerk is directed to enter judgment in favor of third-party defendant Atlas Equipment Manufacturing Ltd., also known as Hebei Atlas Equipment Manufacturing, Ltd., a joint venture organized under Chinese law, and against third-party plaintiffs Weir Slurry Group, Inc., a Wisconsin corporation, and Weir Minerals Australia, Ltd., an Australian corporation, jointly and severally, for attorney fees under RCW 4.28.185(5) in the amount of $43,550.50.

---

[6] For example, on January 7, 2009, Mr. Yand recorded two sets of activities. In the first entry, Mr. Yand listed five tasks, and in the second, he described three activities, each followed in parentheses with an amount of time attributed to the work; the first five activities totaled 2.2 hours and the second three tasks totaled 2.6 hours, but the entries for that date show aggregates of only 1.5 and 1.3 hours, respectively. Exh. 1 to Yand Decl. (docket no. 162-2 at 10). Because of these discrepancies, the Court could not apportion the fees relating to discovery. Similar problems were observed on other dates, including January 8, 15, 16, 21, 22, 23, 28, and 30, 2009, March 13, 2009, and May 4, 2009. In addition, many of the daily logs contain more than one activity, but fail to report the time associated with each activity. As a result, the Court could not determine, with respect to those entries, the amount of time attributable to discovery matters for which Hebei is entitled to attorney fees. Finally, the billing records occasionally refer to undefined acronyms or individuals who are not attorneys of record or identified as witnesses and whose role in the case is not readily apparent.

ORDER - 8

IT IS SO ORDERED.

The Clerk is directed to send a copy of this Order to all counsel of record.

DATED this 30th day of November, 2009.

_____
Thomas S. Zilly
United States District Judge

ORDER - 9